UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X
NATURAL RESOURCES DEFENSE COUNCIL,

                Plaintiff,          17 Civ. 6989 (RWS)

  -against-                          OPINION

U.S. DEPARTMENT OF ENERGY,

                Defendant.
------------------------------------X

A P P E A R A N C E S:

    Attorneys for Plaintiff

    DEMOCRACY FORWARD FOUNDATION
    P.O. Box 34553
    Washington, DC 20043
    By:  Jeffrey B. Dubner, Esq.


    Attorneys for Defendant

    GEOFFREY S. BERMAN
    United States Attorney
    Southern District of New York
    86 Chambers Street, 3rd Floor
    New York, NY 10007
    By:  Talia Kraemer, Esq.



1

**Sweet, D.J.**

Defendant U.S. Department of Energy ("DOE" or the "Defendant") has moved pursuant to 28 U.S.C. §§ 1631 and 1404(a) to transfer this action brought by Plaintiff Natural Resources Defense Council ("NRDC" or the "Plaintiff") to the United States Court of Appeals for the Seventh Circuit.[1] Plaintiff brings this action to challenge the DOE's issuance of an administrative stay (the "Administrative Stay") of two provisions of an agency-promulgated rule (the "Test Procedures Rule" or the "Rule"), which postponed the provisions' effective date pending the outcome of a proceeding before the Seventh Circuit. Defendant now brings this motion to transfer the present action to the Seventh Circuit on the basis that this Court lacks the jurisdiction to decide the matter as it impinges upon the Seventh Circuit's exclusive jurisdiction. Based on the facts and conclusions set forth below, the Defendant's motion to transfer is denied.

---

[1] In the alternative, Defendant requests that this action be dismissed for lack of jurisdiction or improper venue under Rule 12(b)(1) and 12(b)(3). See Def.'s Br. 2 n.1, 14 n.15, 15 n.16. However, the parties agreed, and this Court endorsed, a scheduling order ("Scheduling Order") governing the proceedings in this action that designated the present motion as one for transfer only. See Revised Scheduling Order, ECF No. 15. The Scheduling Order provides that in the event that the motion to transfer is denied, Defendants are permitted to bring a joint motion to dismiss and motion for summary judgment within 45 days. See id. Accordingly, to the extent that Defendant moves in the alternative to dismiss this action at this stage, this motion is denied with leave to re-file in accordance with the Scheduling Order. See id.

2

## I. Facts & Prior Proceedings

The following facts and procedural history is drawn from documents incorporated into the complaint (the "Complaint"), as well as publicly available court filings in other jurisdictions. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (courts may consider evidence outside the pleadings when resolving a challenge to the court's subject matter jurisdiction).

On January 5, 2017, DOE published a final rule entitled "Energy Conservation Program: Test Procedures for Central Air Conditioners and Heat Pumps." *See* Energy Conservation Program: Test Procedures for Central Air Conditioners and Heat Pumps, 82 Fed. Red. 1426 (Jan. 5, 2017). The Test Procedures Rule was part of a series of rulemaking proceedings DOE has undertaken to update and strengthen the energy conservation standards and test procedures for central air conditioners and heat pumps. Among other provisions, the Test Procedures Rule sought to clarify the test procedure for central air conditioners and heat pumps that may be used as replacements for units using an ozone-depleting refrigerant, R-22. Specifically, the Rule revised the required testing procedures for "split" central air conditioning systems, which

3

consist of both outdoor and indoor components. The new procedures require outdoor units that meet specific criteria to be tested by the method prescribed for "outdoor units with no match." *Id.*

On March 3, 2017, Johnson Controls, Inc. ("JCI"), a manufacturer of outdoor units of central air conditioners, filed a petition for review in the United States Court of Appeals for the Seventh Circuit, challenging two provisions of the Test Procedures Rule (the "Seventh Circuit Action"). *See* Pet. for Review, ECF No. 1, *Johnson Controls, Inc. v. U.S. Dep't of Energy*, No. 17-1470 (7th Cir. Mar. 3, 2017); Energy Conservation Program: Test Procedures for Central Air Conditions and Heat Pumps – Notification of Administrative Stay, 82 Fed. Reg. 32227 (July 13, 2017) (the "Notification of Administrative Stay"). NRDC sought to participate in the Seventh Circuit Action by filing an unopposed motion seeking to intervene in support of the Test Procedures Rule. *See* Mot. of Natural Resources Defense Council for Leave To Intervene in Supp. of Resp't, ECF No. 7, *Johnson Controls, Inc.*, No. 17-1470 (7th Cir. Apr. 3, 2017). The Seventh Circuit denied NRDC's motion without prejudice, but invited NRDC to seek leave to participate as amicus in the proceedings. Order, ECF No. 10, *Johnson Controls, Inc.*, No. 17-1470 (7th Cir. Apr. 3, 2017). The Seventh Circuit granted

4

intervenor status to a competitor of JCI's, Lennox International Inc. ("Lennox"), which similarly sought leave to intervene in support of the Test Procedures Rule. *See id.*; Mot. by Lennox Int'l Inc. to Intervene in Supp. of Resp'ts, ECF No. 9, *Johnson Controls, Inc.*, No. 17-1470 (7th Cir. Apr. 3, 2017).

In addition to filing the Seventh Circuit Action, JCI sought temporary relief from DOE with regard to the Test Procedures Rule. First, on the same date JCI filed its petition for review, JCI petitioned DOE under 42 U.S.C. § 6293(c)(3) for a 180-day extension of time to comply with the new rule's requirements for representations about product efficiency.[2] *See* Letter from Daniel R. Simmons, Acting Assistant Secretary, Office of Energy Efficiency and Renewable Energy, to Elizabeth A. Haggerty, Vice-President & General Manager Unitary Products Group, JCI (June 2, 2017). Second, on May 31, 2017, having not yet received a ruling on its extension request, JCI asked DOE to administratively stay two provisions of the Test Procedures Rule under Section 705 of the Administrative Procedures Act ("APA") pending the outcome of the Seventh Circuit proceedings. *See*

---

[2] By statute, manufacturers may not make any representations about a consumer's product's efficiency unless the product has been tested in accordance with any applicable testing procedures and the manufacturer's representations disclose the results of that testing. 42 U.S.C. § 6293(c)(1). When DOE prescribes new or amended test procedures, a manufacturer may petition DOE for an extension of time to conform its representations with the new procedures. *Id.* § 6293(c)(3).

Notification of Administrative Stay, 82 Fed. Reg. at 32227. Two days later, DOE granted JCI its requested 180-day extension, until January 1, 2018, to comply with the representation requirements of the Test Procedures Rule. *See* Simmons Letter. Shortly thereafter, in light of the extension, JCI asked DOE to hold its Section 705 stay request in abeyance. *See* Notification of Administrative Stay, 82 Fed. Reg. at 32227.

On June 29, 2017, Lennox filed a complaint in the United States District Court for the Northern District of Texas, seeking to challenge DOE's grant of JCI's request for a 180-day extension (the "Texas Action"). *See* Compl. for Declaratory and Inj. Relief, ECF No. 1, *Lennox Int'l Inc. v. U.S. Dep't of Energy*, No. 17 Civ. 1723 (N.D. Tex. June 29, 2017). That same day, Lennox moved for an emergency stay of the 180-day extension, arguing that it would offer JCI an unfair competitive advantage. *See* Lennox's Mot. for Emergency Stay, ECF Nos. 3 & 4, *Lennox Int'l Inc.*, No. 17 Civ. 1723 (N.D. Tex. June 29, 2017). The Texas District Court denied the emergency motion. Order, ECF No. 16, *Lennox Int'l Inc.*, No. 17 Civ. 1723 (N.D. Tex. June 30, 2017).

On July 3, 2017, prior to the effective date of the Test Procedures Rule, DOE issued an administrative stay

postponing the effective date of two provisions of the Rule pending the outcome of the Seventh Circuit proceedings. *See* Grant of Administrative Stay Concerning Test Procedure for Central Air Conditions and Heat Pumps ("Grant of Administrative Stay"), Energy.gov, https://energy.gov/gc/downloads/grant-administrative-stay-concerning-test-procedure-central-air-conditioners-and-heat. DOE issued the Administrative Stay under Section 705 of the APA, which permits an agency to postpone the effective date of agency action pending judicial review if the agency finds that "justice so requires." *See* 5 U.S.C. § 705; Grant of Administrative Stay at 4. DOE stated that it issued the stay based on concerns raised by JCI about the impact of the two relevant provisions of the Test Procedures Rule, and to ensure that all manufacturers were placed on equal footing with JCI. *See* Grant of Administrative Stay at 4. DOE further provided that, aside from the two provisions covered by the stay, the Test Procedures Rule would otherwise go into effect as scheduled on July 5, 2017.[3] *Id.* at 1, 5.

---

[3] When the Test Procedures Rule was promulgated, it specified an effective date of February 6, 2017. DOE postponed that effective date first to March 21, 2017, and then to July 5, 2017. *See* Energy Conservation Program: Test Procedures for Central Air Conditioners and Heat Pumps – Final rule; delay of effective date, 82 Fed. Reg. 8985 (Feb. 2, 2017); Energy Conservation Program: Test Procedures for Central Air Conditioners and Heat Pumps – Final rule; further delay of effective date, 82 Fed. Reg. 14425 (March 21, 2017). NRDC does not challenge those postponements. *See* Compl. ¶¶ 47-52.

The Administrative Stay was published on DOE's website on July 3, 2017. *See* Grant of Administrative Stay, https://energy.gov/gc/downalods/grant-administrative-stay-concerning-test-procedure-central-air-conditioners-and-heat. On that same day the Government filed a notice in the Texas Action, attaching a copy of the Administrative Stay. Notice of Administrative Stay Pending Judicial Review in the Seventh circuit ("Notice of Administrative Stay"), ECF No. 18, *Lennox Int'l Inc.*, No. 17 Civ. 1723 (N.D. Tex. July 3, 2017) at Ex. A. A notification of the stay was later published in the Federal Register.[4] On July 17, 2017, Lennox voluntarily dismissed the Texas Action, *see* Notice of Dismissal, ECF No. 22, *Lennox Int'l Inc.*, No. 17 Civ. 1723 (N.D. Tex. July 17, 2017), although Lennox remains an intervenor in the Seventh Circuit Action.

On September 14, 2017, NRDC filed the present action to challenge the Administrative Stay.[5] *See* Compl. ¶¶ 47-52. Prior to filing this action, NRDC sought to intervene in the Seventh

---

[4] The Federal Register notification indicates that the stay was issued on July 3, 2017. Notification of Administrative Stay, 82 Fed. Reg. at 32227.
[5] On September 11, 2017, NRDC filed a petition for review of the Administrative Stay in the Second Circuit "to protect its rights" in case a court were to decide that jurisdiction properly lies in the Second Circuit. *See* Pet'r's Unopposed Mot. to Hold in Abeyance Pending Disposition of Proceedings in the Dist. Ct. at 9, ECF No. 13, *NRDC v. U.S. Dep't of Energy*, No. 17-2827 (2d Cir. Oct. 11, 2017). The Second Circuit petition for review has been held in abeyance pending the outcome of the present motion. Order, ECF No. 17, *id.*

8

Circuit Action on which the Administrative Stay was predicated, but it did not directly seek relief before the Seventh Circuit.

The present motion to transfer was heard and marked fully submitted on January 17, 2018.

**II.  DOE's Motion to Transfer to the Seventh Circuit is Denied**

DOE requests transfer of this action to the Seventh Circuit under either 28 U.S.C. § 1631 or § 1404(a). Section 1631 requires a court to transfer a case "to any other court in which the action or appeal could have been brought at the time it was filed or noticed" if the transferor court finds that it lacks jurisdiction over the case, and if making such a transfer "is in the interest of justice." *See* 28 U.S.C. § 1631; *Ruiz v. Mukasey*, 552 F.3d 269, 273 (2d Cir. 2009) (citing *id.*) ("[W]e are required to transfer a case to another court when: (1) we lack jurisdiction over the case; (2) the transferee court would have possessed jurisdiction over the case at the time it was filed; and (3) transfer would be in the interest of justice."). As such, transfer pursuant to Section 1631 is mandatory only when all conditions are met. *See Paul v. INS*, 348 F.3d 43, 46 (2d Cir. 2003).

9

Section 1404(a) allows a district court to transfer a case for the convenience of parties and witnesses "to any other district or division where it might have been brought" if doing so is "in the interest of justice." *See* 28 U.S.C. § 1404(a). Thus, pursuant to either statute, a court may only transfer an action to a court where the action could have been brought originally. *See Davallo v. Kaplan*, 256 F. Supp. 3d 482, 483 (S.D.N.Y. 2017) (finding that on a § 1404(a) motion to transfer, the first step for the court is to "determine whether the case could have been brought in another district.").

Here, DOE seeks transfer of the present action to the Seventh Circuit only. *See* Def.'s. Br. 1. Therefore, the central inquiry pursuant to both statutes is whether this action could have originally been brought by the NRDC in the Seventh Circuit. NRDC argues that this motion may be resolved simply by considering jurisdictional principles. NRDC was not permitted to have originally filed this action either in federal appellate court, or in a district court in the Seventh Circuit in light of subject matter and personal jurisdiction concerns. DOE argues that NRDC's present challenge to the DOE's issuance of the Administrative Stay in the Seventh Circuit Action rests exclusively within the jurisdiction of the Seventh Circuit, and therefore must be transferred there.

"The normal default rule is that persons seeking review of agency action go first to district court rather than to a court of appeals." *Watts v. SEC*, 482 F.3d 501, 505 (D.C. Cir. 2007) (internal quotations and alterations omitted). A direct filing in a court of appeals is an exception to the original jurisdiction of the district courts. *Id.* "Only when a direct-review statute specifically gives the court of appeals subject-matter jurisdiction to directly review agency action may a party seek initial review in an appellate court." *Micei Int'l v. Dep't of Commerce*, 613 F.3d 1147, 1151 (D.C. Cir. 2010) (citing *Watts*, 482 F.3d at 505) (internal quotations omitted). However, if the requisite direct-review provision appears in neither the "statute pursuant to which the agency action is taken, or in another statute applicable to it," *see Five Flags Pipe Line Co. v. Dep't of Transp.*, 854 F.2d 1438, 1439 (D.C. Cir. 1988), then "subject matter jurisdiction regarding review of agency rulemaking falls to the district courts under federal question jurisdiction." *See Natural Res. Def. Council v. Abraham* ("*Abraham*"), 355 F.3d 179, 193 (2d Cir. 2004) (internal citation omitted); *see also Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001) ("A plaintiff should not be compelled to mount a suit in a district where she cannot be sure of perfecting jurisdiction . . . .").

11

Here, the only possible statutory authorization permitting the NRDC to bring such an action directly in a court of appeals is 42 U.S.C. § 6306(b)(1), which allows a person "adversely affected by a rule prescribed under section 6293," such as the Test Procedures Rule, to "file a petition with the United States court of appeals for the circuit in which such person resides or has his principal place of business." *See, e.g., Ukiah Adventist Hosp. v. FTC*, 981 F.2d 542, 551 (D.C. Cir. 1992) (evaluating whether transfer was permissible by looking to venue provision of direct review statute). Thus, Section 6306(b)(1) conceivably permits the NRDC to file the present action in the court of appeals for the circuit in which it "resides" or has its "principal place of business." *See id.*

NRDC is an entity headquartered in New York City. Compl. ¶ 14. Its principal place of business is therefore in New York City, within the Second Circuit. *See generally Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (defining "principal place of business" as "the place where a corporation's officers direct, control, and coordinate the corporation's activities[,] . . . normally . . . the place where the corporation maintains its headquarters"). Under the federal venue statute, this is also NRDC's place of residency. *See* 28 U.S.C. § 1391(c)(2) ("[A]n entity with the capacity to sue and be sued shall be

12

deemed to reside, . . . if a plaintiff, only in the judicial district in which it maintains its principal place of business . . . ."). As such, while Section 6306(b)(1) establishes that the NRDC was permitted to file the present action in the Second Circuit originally, it does not create authority for the NRDC to have filed in the Seventh Circuit. Because the Seventh Circuit is not a court where this case could have been brought, transfer is therefore not authorized under either Section 1631 or 1404(a).

Further, Second Circuit precedent belies the DOE's argument that NRDC is required to bring this challenge in the same forum as the litigation contesting the substance of the underlying rule. In *Abraham*, the Second Circuit held that it maintained jurisdiction to hear a challenge to a series of DOE final rules delaying the effective date of implementation of certain efficiency standards even though a challenge to the underlying efficiency standards was pending before the Fourth Circuit. 355 F.3d at 189-90, 194. The Second Circuit did not suggest that the fact that underlying litigation was pending in a different court was in any way relevant to its jurisdiction.

According to this logic, there is no reason why this Court lacks the jurisdiction to review the DOE's decision to

13

delay the effective date of the Rule simply because another case is pending before the Seventh Circuit challenging the Rule itself.

Nevertheless, even if there were some plausible basis for filing the present action in the Seventh Circuit, transfer to that forum would be inappropriate. Transfer is proper only if the plaintiff has an "unqualified right" to bring the action in the transferee forum, such that "venue [is] proper in the transferee district and the transferee court [has] power to command jurisdiction over all of the defendants." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970) (citation omitted). "If there is a 'real question' whether a plaintiff could have commenced the action originally in the transferee forum, it is evident that he would not have an unqualified right to bring his cause in the transferee forum." *Id.; see also Harry Rich Corp. v. Curtiss-Wright Corp.*, 308 F. Supp. 1114, 1116 (S.D.N.Y. 1969) ("The plaintiff must have had an unqualified right to bring the action in the proposed transferee district independent of the consent of the defendant . . . ."). As such, even if there were some ambiguity as to whether NRDC's challenge could have been brought in the Seventh Circuit, any ambiguity is resolved against transfer.

DOE's reliance on Section 1404(a) in seeking transfer to the Seventh Circuit fails for another reason: as the plain statutory language provides, transfer is allowed only to a "district or division," not to an appellate court. DOE suggests that despite this language, Section 1404(a) should be construed to contain the entirety of preexisting *forum non conveniens* law. However, this argument has been rejected by both the Supreme Court and the Second Circuit. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981); *see also Capital Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 607 (2d Cir. 1998) ("Section 1404(a) does not apply in cases where the purportedly more convenient forum is not a United States district court.") (citation omitted). Thus, this action may not be transferred to the Court of Appeals for the Seventh Circuit under Section 1404(a) even if that were a forum where NRDC could have filed its petition for review.

Finally, even if transfer to the Seventh Circuit was permissible, such action would still be inappropriate as DOE has failed to satisfy its burden of making a strong showing that transfer is warranted. *See N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) ("[T]he party requesting transfer carries the burden of making out a strong case for transfer") (internal quotation and citation

15

omitted). On a motion to transfer pursuant to § 1404(a), "the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court. for W. Dist. of Texas*, 134 S. Ct. 568, 581 (2013). The factors considered in granting a motion to transfer are:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties.

*D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006) (alteration in original) (citation omitted). Critically, while judicial economy may be considered as an additional factor, "judicial economy . . . is not alone sufficient." *In re Warrick*, 70 F.3d 736, 740 (2d Cir. 1995); *see also id.* (quoting *In re Scott*, 709 F.2d 717, 721 (D.C. Cir. 1983)) ("Inconvenience to the court is a relevant factor but, standing alone, it should not carry the day.").

Considering all factors taken together, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *see also Koslofsky v.*

16

*Santaturs, Inc.*, No. 10-cv-9160, 2011 WL 10894856, at *2 (S.D.N.Y. Aug. 18, 2011) (citing *Iragorri*, 274 F.3d at 70) (internal citation omitted) ("[A]bsent a strong showing that the balance of factors favors the alternative forum, Plaintiff's choice of forum will not be disturbed."); *Orb Factory, Ltd. V. Design Sci. Toys, Ltd.*, 6 F. Supp. 2d 203, 210 (S.D.N.Y. 1998) (citations omitted) ("Generally, plaintiff's choice of forum is entitled to considerable weight, and should not be disturbed unless the balance of the several factors is strongly in favor of the defendant. . . . Further, the plaintiff's choice is generally accorded more deference . . . where the plaintiff is a resident of the forum district.").

While Defendant agrees that the *D.H. Blair* factors control here, DOE argues instead that "efficiency and the interests of justice, based on the totality of the circumstances," should guide the transfer analysis. *See* Def.'s Reply Br. 9 (internal citation omitted). DOE contends that judicial economy weighs in favor of transfer because Plaintiff's challenge to the agency's issuance of the Administrative Stay might impinge on the Seventh Circuit's authority.

The Northern District of California rejected an argument identical to that proposed by DOE in *California v.*

17

*United States Bureau of Land Mgmt.*, No. 17-cv-3804 (N.D. Cal. Sept. 7, 2017). In that case, the Bureau of Land Management ("BLM") issued a stay under Section 705 in light of a substantive challenge to a rule pending in the District of Wyoming, and the state of California challenged the stay in the Northern District of California. *See* Order Denying Defs.' Mot. to Transfer at 2, *California v. U.S. BLM*, No. 17-cv-3804, at 2 (N.D. Cal. Sept. 7, 2017), Doc. No. 73 (slip op.). Defendants moved to transfer the case to the District of Wyoming, arguing "that it would serve the interests of justice because litigation related to the validity of the original issuance of the Rule is already pending in the District of Wyoming." *Id.* at 4. The district court rejected this argument:

> [J]udicial economy does not favor transfer because there is no overlap between this case and the litigation in the District of Wyoming. This case concerns an agency action in which Defendants postponed compliance dates under Section 705 after the effective date had passed. By contrast, the District of Wyoming litigation challenges a different agency action, the BLM's promulgation of the Rule . . . as exceeding its authority under the operative statute. Thus, this case concerns a completely distinct, purely legal question about Defendants' authority to postpone the compliance dates under Section 705. The extent of Defendants' authority under Section 705 is not at issue in the District of Wyoming case, as Section 705 was not invoked.

*Id.* at 4-5.

18

Likewise, here, there is no overlap between the present action and the litigation in the Seventh Circuit. This case concerns an agency action in which the DOE issued a stay postponing the effective date of two provisions of the Test Procedures Rule, whereas the Seventh Circuit litigation challenges the Test Procedures Rule itself. The current action concerns an entirely distinct issue, as well as a separate rule with a separate administrative record, than that before the Seventh Circuit.

Accordingly, "[w]here the balance of convenience is in equipoise, plaintiff's choice of forum should not be disturbed." *Doman v. Herman*, No. 95-cv-260, 1995 WL 347402, at *1 (S.D.N.Y. June 8, 1995) (quoting *Ayers v. Arabian American Oil Co.*, 571 F. Supp. 707, 709 (S.D.N.Y. 1983)).

## III. Conclusion

For the foregoing reasons, the Defendant's motion to transfer is denied.

It is so ordered.

**New York, NY**
**March 5, 2018**

　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　ROBERT W. SWEET
　　　　　　　　　　　　　　　U.S.D.J.